## Chicago, R. I. & P. Ry. Co. v. Phil. E. Downey, Adm., etc.

1. EVIDENCE—*Rules of Railroad Companies, When Not Admissible.* —In an action against a railroad company for damages resulting from the death of a person, a rule of the company requiring the display of lights on the rear of its engines at night, over the center of the track, is not admissible where the deceased person was neither directly nor indirectly in the service of the company or working for any one having contractual relations with it.

2. DAMAGES—*Where $5,000 is Excessive.*—A man sixty years of age was killed while walking along or attempting to cross the track of a railroad company. He was employed as a village watchman from which he obtained $20 from the village and something more from the voluntary contributions of the business men of the place, so that his entire earnings amounted in some months to $45. He left surviving him a widow nearly sixty years old at the time of his death, and four children ranging in age from twenty to thirty-five years. The wife, for some time previous to his death had not been living with him, but lived in a house of her own. The deceased lived by himself, and what amount he spent for his own maintenance does not appear. There was nothing to show that he had undertaken the care or maintenance of his wife or children or that he had denied himself anything on their account.

C., R. I. & P. Ry. Co. v. Downey.

Under such circumstances an award of $5,000 as the pecuniary damage sustained by his widow and next of kin is excessive.

**Trespass on the Case,** for damages resulting from the death of a person by the negligent act of another. Appeal from the Circuit Court of Rock Island County; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the April term, 1901. Reversed and remanded. Opinion filed July 12, 1901.

JACKSON & HURST and W. T. RANKIN, attorneys for appellant; ROBERT MATHER, of counsel.

LOONEY & KELLY and JOHN T. KENWORTHY, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

This was an action brought by appellee to recover damages said to have been sustained by the widow and next of kin of Thomas Hillings, deceased, who was killed, either while walking along or attempting to cross the track of appellant.

The principal questions in dispute upon the trial of the case were :

1st.  Was the deceased upon the crossing at the time he was struck, or was he walking upon the track or attempting to cross at a place other than a crossing?  His body was found something over twenty feet from the crossing, and it is insisted by appellant that he was on the track at the place where his body was found at the time he was struck by the engine; while it is insisted by appellee that the engine was backing rapidly and struck him with such force that he was thrown from the crossing to the place where his body was found.

2d.  Was the engine bell ringing at the time of the accident?  As to this there is the usual contradictory evidence in such cases, it being contended by appellant that the bell was rung automatically, and necessarily sounded whenever the engine was in motion.

3d.  At what rate of speed was the engine going?  Some of the witnesses testify that it was moving not more than two or three miles an hour; others estimate its speed as

high as five miles an hour. Appellee insists it is shown that the engine was moving at a much greater rate of speed, as high as from fifteen to twenty miles an hour, such showing, it is contended, being arrived at from the testimony of certain witnesses, as to how far the engine moved while they were walking a certain distance at, as they say, a certain rate of speed.

4th. Whether there was such a light upon the rear of the engine, it being moved backward, as proper care required, or such as the rules of the company require.

5th. What damages, if any, did the widow and next of kin sustain by reason of the accident?

Over the objections of appellant, appellee was permitted to introduce in evidence the following rules:

" Rule 36. Two green flags by day and night, and, in addition, two green lights by night, displayed in the place provided for that purpose on the front of the engine, denote that the train is followed by another train running on the same schedule and entitled to the same time-table rights as the train carrying the signal."

"Rule 37. Two white flags by day and night, and, in addition, two white lights by night, displayed in the place provided for that purpose on the front of the engine, denote that the train is an extra. These signals must be displayed by all extra trains, but not by yard engines."

" Rule 37 A. When an engine is running backwards the signals provided for in rules 36 and 37 must be displayed in the same position on the engine as when it is running forward, and, in addition, the engine must carry a white light on the rear of the tender over the center of the track."

Appellee urged in the court below, and urges here, that there was no evidence that the engine carried a white light on the rear of the tender over the center of the track; that the deceased had a right to rely upon the observance of such rule by appellant, and consequently may have attempted to go over the crossing because he saw no such light, and therefore thought no engine could be backing over the crossing. We do not think such a rule should have been admitted in evidence. The deceased was not, either directly or indirectly, in the service of the company.

C., R. I. & P. Ry. Co. v. Downey.

Neither was he working for any one having contractual relations with appellant.

In justification of the admission of these rules, appellee cites St. L., A. & T. H. R. R. Co. v. Bauer, Adm'x, 156 Ill. 106. That was a case of an employe of the railroad itself, whose duty it was to be familiar with the rules, and concerning whom there arose a presumption that he was acquainted with them.

Appellee also cites the case of C. & A. R. R. Co. v. Kelley, 75 Ill. App. 490, 80 Ill. App. 675, and 182 Ill. 267. The person injured in that case was a railway mail transfer clerk whose duty as such clerk required him to be at the station to receive mail from the road and necessarily to be familiar with its rules and practice as to the running of trains

Appellee also cites the case of C. & E. I. R. R. Co. v. Jennings, Adm'r, 89 Ill. App. 335. In that case it appears that the deceased had for a long time been in the habit of riding almost daily upon the trains of the road past and at the place where he was injured, and that necessarily he had acquired a familiarity with the practice of the road as to the running of trains at that point.

There is a marked distinction between testimony as to what the practice of a road was and is as to the running of its trains and what the printed or written rules of the company in respect to such matters have been and are. The habitual practice of a road, continued for some length of time, is a matter concerning which people who are much upon the road, or whose business brings them frequently where they observe such practice, would naturally become familiar with; but there can be no presumption that a person not an employe of the railroad, and not by his vocation either obliged to or having a duty resting upon him to familiarize himself with printed or written rules, is acquainted therewith. In the present case, for aught that appears, the rule introduced in evidence was made a rule of the company and promulgated for the first time on the very day of the accident. If a person not an employe of a railroad is presumed, when suit is brought against the

company, to be familiar with its rules, then it would follow that if a knowledge of such rules would operate against his recovery, or the recovery of those who sue for an accident to him, the rule would be admissible upon proof of the existence of the rule, and that the party presumed to be charged with knowledge of it lived near the line of the road or in the vicinity of where it was in operation or posted.

The damages awarded in this case, $5,000, are, under the evidence, excessive. Deceased was at the time of his death at least sixty years old. Some witnesses estimate his age as high as sixty-five. He was employed for a considerable portion of the time as a village watchman, from which employment it appears he obtained $20 per month from the village, and voluntary contributions from business men of the place, so that his entire earnings amounted some months to $45 per month, and in all probability as much as $40 per month most if not all the time. He left a widow nearly sixty years old at the time of the accident, and four children ranging in age from thirty-five to twenty years. None of the children seem to have been dependent or depending upon their father for support. His wife, for some time previous to his death, had not been living with him, and seems to have lived in a house of her own. His wife appears to have had children by another husband, all of them at the time of the accident grown up and married. How much, if anything, she received from deceased for her support is not shown, as she did not testify at the trial. The deceased lived by himself, and what amount he spent for his own maintenance or pleasure is not shown. From time to time the deceased gave small sums of money to his children. There was no fixed or regular allowance, although it appears that to one daughter, Rose, he gave for a time $5 a month and sometimes more. The most ever given her out of his month's pay was $8 or $10. To others of his children he had at times sent as much as $5 a month. Manifestly, his contributions to his children can not have been large.

There is nothing to show that he had undertaken the care or maintenance of any of them, or that he denied himself

any comfort or enjoyment on their account. Under such circumstance the award of $5,000 as the pecuniary damage sustained by his widow and next of kin is excessive. We are not aware of any case in which, under such circumstances, the sum of $5,000 has been held by the Supreme Court to be an amount fairly or reasonably appearing to be the pecuniary damage sustained by the widow and next of kin.

The judgment of the Circuit Court is reversed and the cause remanded.